*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARREL RAY DILLEY,

Defendant-Appellant.

UNPUBLISHED
August 13, 2025
9:20 AM

No. 366969
Kalkaska Circuit Court
LC No. 2022-004672-FH

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals his jury conviction for resisting or obstructing a police officer, MCL 750.81d(1). He was sentenced as a third-offense habitual offender, MCL 769.12, to 10 days in jail. On appeal, he challenges the sufficiency of the evidence supporting his conviction and contends that trial counsel rendered ineffective assistance by inadequately investigating the circumstances of the traffic stop, failing to consult an expert witness, and neglecting to request appropriate jury instructions. We affirm.

## I. BACKGROUND

On the evening of October 30, 2021, Kalkaska Police Officer Michael McCormack was on patrol, traveling south on Walnut Street, when he observed a blue truck—driven by defendant—fail to come to a complete stop at a stop sign. The truck then proceeded northbound on Walnut, exceeding the 25-mile-per-hour speed limit. Officer McCormack turned his patrol vehicle around to initiate a traffic stop. After catching up to the truck, he activated his emergency lights and sirens. Defendant continued driving for another four or five blocks before pulling into the driveway of his mother's home.

As Officer McCormack pulled in behind him and exited his patrol vehicle, defendant got out of the truck carrying a bag and began walking toward the house. The officer drew his firearm, pointed it at defendant, and ordered him to stop and get on the ground. Defendant did not comply. Instead, he removed his jacket, opened the driver-side door of the truck, and began rummaging inside. Officer McCormack continued issuing commands, but defendant did not kneel until his mother came outside. When defendant refused to lie down to be handcuffed, the officer pushed

-1-

him to the ground. Defendant then tensed his body and pulled away as Officer McCormack attempted to handcuff him. Kalkaska County Sheriff's Deputy Brian Creighton arrived shortly afterward and assisted in handcuffing defendant, who was subsequently charged with resisting or obstructing a police officer.

At trial, both Officer McCormack and Deputy Creighton testified about their interactions with defendant, and the jury viewed body camera footage of the incident. Defendant asserted that Officer McCormack had overreacted and exceeded his authority by drawing his firearm. He also challenged the officer's ability to observe the traffic violations. The jury convicted defendant as charged, and the trial court imposed the sentence described above.

Following trial, defendant moved for a new trial or an evidentiary hearing, asserting that the trial court rendered ineffective assistance. He argued that counsel failed to investigate the stop adequately, consult an expert witness, and request appropriate jury instructions. The trial court denied the motion without holding an evidentiary hearing, reasoning that defendant had not overcome the presumption that counsel's performance was constitutionally effective. Defendant now appeals.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence supporting his conviction. We review that challenge de novo, considering the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Prude*, 513 Mich 377, 385; 15 NW3d 249 (2024) (citation omitted). "[W]hen the lawfulness of police action is an element of a criminal offense, a court reviewing a challenge to the sufficiency of the evidence . . . must view the facts in the light most favorable to the prosecution and then determine whether, as a matter of law, an officer's actions were 'lawful' in light of those facts." *Id*. at 386. "Under this test, a conviction will be overturned only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct." *Id*.

In reviewing this challenge, we are "*required* to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). The prosecution is not required to disprove every reasonable theory of innocence; "it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

"Due process requires the prosecution to prove every element beyond a reasonable doubt." *Oros*, 502 Mich at 240 n 3. In order to convict defendant of assaulting, resisting, or obstructing a police officer in violation of MCL 750.81d(1), the prosecution was required to prove that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person . . . was a police officer

-2-

performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (citation omitted). And because the enactment of MCL 750.81d did not abrogate the common-law rule that a person may resist an unlawful arrest, the prosecution also "must establish that the officers acted lawfully as an element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Id*. at 491-492.

Defendant does not dispute that he knew Officer McCormack was a police officer performing his official duties. At issue is whether the evidence was sufficient to establish (1) resistance or obstruction and (2) the lawfulness of Officer McCormack's conduct.

## 1. RESISTANCE OR OBSTRUCTION

The record contains ample evidence from which the jury could conclude that defendant knowingly resisted or obstructed Officer McCormack. Body camera footage shows the officer issuing multiple commands for defendant to get on the ground, which defendant verbally and physically refused to follow. See *People v Feeley*, 499 Mich 429, 436; 885 NW2d 223 (2016) ("To 'obstruct' includes a knowing failure to comply with a lawful command."). Even after kneeling, defendant would not lie down, prompting the officer to use physical force. Defendant continued to resist by tensing his body and pulling away as the officer attempted to apply handcuffs. Officer McCormack testified to this conduct, and the body camera audio captures him telling defendant to relax and stop pulling away. That evidence was sufficient to establish that defendant obstructed Officer McCormack.

In support of his position, defendant relies on Deputy Creighton's testimony that he was able to control and handcuff defendant's right arm without resistance. But that testimony does not negate evidence of resistance directed toward Officer McCormack, and the charge pertained specifically to resistance against Officer McCormack, not Deputy Creighton. Evidence of cooperation with one officer does not preclude a finding that defendant resisted another. Given the testimony and video evidence, the jury could reasonably conclude that defendant resisted or obstructed.

## 2. LAWFULNESS OF THE OFFICER'S CONDUCT

Because a person has a common-law right to resist an unlawful arrest or command, a conviction for resisting or obstructing under MCL 750.81d(1) requires that the officer's conduct was lawful. *People v Moreno*, 491 Mich 38, 55-56; 814 NW2d 624 (2012). Here, Officer McCormack sought to detain defendant for a traffic stop, which "implicates defendant's Fourth Amendment rights." *Prude*, 513 Mich at 386; see also *People v Mazzie*, 326 Mich App 279, 291-292; 926 NW2d 359 (2018) (holding that a traffic stop constitutes a seizure and therefore implicates the Fourth Amendment right to be free from unreasonable seizures). And because the Fourth Amendment protects individuals "only from *unreasonable* searches and seizures," a seizure is lawful within the meaning of the Fourth Amendment if it is reasonable. *Id*. at 292. "In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity." *Id*. (citation omitted).

A traffic stop is reasonable within the meaning of the Fourth Amendment "if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law," including traffic law. *Id*. (citation omitted). "Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *Id*. (citation omitted). "An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience." *Id*. at 293 (citation omitted).

In this case, Officer McCormack testified that he observed defendant fail to stop at a stop sign and drive above the speed limit. Those observations provided reasonable suspicion to justify a brief investigatory stop for violations of multiple traffic laws. See MCL 257.649(8); MCL 257.627. When defendant continued driving for several blocks after the officer activated his lights and sirens, the officer had probable cause to believe that defendant had committed fleeing and eluding in violation of MCL 750.479a—a felony—justifying a warrantless arrest. See *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229 (2014) (holding that an arrest is lawful when an officer has probable cause to believe that an individual committed a felony or misdemeanor in the officer's presence). The record therefore supports the conclusion that Officer McCormack acted lawfully when he attempted to arrest defendant.

On appeal, defendant submits that Officer McCormack exceeded his authority by drawing his firearm during the encounter. But "[o]fficers are not required to take unnecessary risks in the performance of their duties, and a balance must be struck between the public interest and interference by law officers." *People v Green*, 260 Mich App 710, 720; 680 NW2d 477 (2004). Officer McCormack cited multiple safety concerns: defendant failed to pull over, exited his vehicle during the traffic stop, failed to comply with commands, and was carrying a bag the officer could not see into. Under those circumstances, the decision to draw a firearm did not render the officer's conduct unlawful.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also contends that the trial court erred by denying his motion for a new trial, asserting that trial counsel rendered ineffective assistance by (1) conducting an inadequate investigation into the legality of the traffic stop and failing to consult an expert, and (2) mishandling the jury instructions.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). We review the trial court's factual findings for clear error and review de novo questions of constitutional law. *Id*. "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Johnson*, 342 Mich App 90, 93-94; 992 NW2d 668 (2022) (citation omitted). Because no *Ginther*[1]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

hearing was conducted, "our review is limited to mistakes that are apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Muniz*, 343 Mich App 437, 441; 997 NW2d 325 (2022). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, *id.*, or when it makes an error of law, *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017).

Under both the Michigan and United States Constitutions, criminal defendants have the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant seeking a new trial on the basis of ineffective assistance of counsel "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citation omitted).

To establish deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant alleging ineffective assistance "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. We do not "second-guess counsel on matters of trial strategy," nor "assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted).

### 1. INVESTIGATION AND CONSULTATION OF AN EXPERT

Defendant first contends that counsel rendered ineffective assistance by failing to investigate and retain an expert to challenge the legality of the traffic stop.

The decision to retain witnesses—including experts—is generally a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. Accordingly, we must determine "whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Trakhtenberg*, 493 Mich at 52 (cleaned up).

In the trial court, defendant submitted a report by a crash reconstruction specialist and retired law enforcement officer who had reviewed the trial evidence and questioned Officer McCormack's ability to see the alleged traffic infractions. The expert opined that the officer may not have had a clear view of the stop sign and questioned whether the officer could accurately

estimate the truck's speed. Defendant asserts that, had trial counsel consulted an expert, the defense could have introduced that testimony to cast doubt on the lawfulness of the stop.

The record, however, shows that trial counsel *did* challenge the officer's testimony on those very points. On cross-examination, counsel elicited that Officer McCormack had observed the stop sign from more than a block away, in the dark, while traveling in the opposite direction. The officer admitted he "didn't really have a head[-]on view" of the intersection. Counsel also introduced a photograph taken from the officer's vantage point to question his ability to see whether defendant actually failed to stop. In addition, counsel drew attention to the officer's limited experience and the absence of radar-based speed measurements.

Although defendant contends that expert testimony "would have further supported the defense theory that Officer [McCormack] acted unlawfully," the mere fact that such testimony might have been helpful does not render counsel's performance deficient. See, e.g., *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016) ("Although defendant believes that additionally presenting an expert . . . would have been helpful, and defendant may even be right, that counsel could conceivably have done more, or that a particular trial strategy failed, does not mean counsel's performance was deficient."). The central issues in this case—visibility, distance, and perception—were within the understanding of the average juror. See *People v Kowalski*, 492 Mich 106, 121; 821 NW2d 14 (2012) ("[T]he threshold inquiry—whether the proposed expert testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue'— is also not satisfied if the proffered testimony is not relevant or does not involve a matter that is beyond the common understanding of the average juror."). On this record, defendant has not shown that counsel's failure to consult an expert fell below an objective standard of reasonableness.

## 2. JURY INSTRUCTIONS

Defendant next submits that counsel rendered ineffective assistance by failing to request jury instructions that supported the defense theory of the case, which is that defendant had the right to resist an unlawful arrest.

A criminal defendant is entitled to a properly instructed jury. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). "The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (citation omitted). "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490; see also *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022) (holding that trial counsel rendered ineffective assistance by failing to request a jury instruction that supported the defense theory of the case).

Michigan recognizes a common-law right to resist unlawful police conduct. *Moreno*, 491 Mich 38 at 55–56. As a result, where the defense theory is that the officer acted unlawfully, the jury must be instructed accordingly. The Use Note to M Crim JI 13.5 reflects that principle, stating that courts should give the instruction "where the illegality of the arrest or the officer's conduct is offered as a defense."

-6-

Here, trial counsel agreed to have the jury instructed using M Crim JI 13.2, which applies to charges for resisting or obstructing a public official under MCL 750.479. That instruction is substantively identical to M Crim JI 13.1—the model instruction for resisting or obstructing under MCL 750.81d—except that it adds an additional element requiring the prosecution to prove "the defendant's actions were intended by the defendant, that is, not accidental." M Crim JI 13.2.

Although M Crim JI 13.1 may have been the more appropriate instruction for the charged offense, defendant cannot establish prejudice. By using M Crim JI 13.2, the court effectively increased the prosecution's burden by requiring proof of intent, which is not required under MCL 750.81d(1). Moreover, defendant's defense theory of the case—that he lawfully resisted an unlawful arrest—presumes that his actions were intentional. It is therefore unclear how including the intent element undermined the defense.

Defendant also contends that counsel should have requested the trial court to include additional language from the Use Note to M Crim JI 13.5, explicitly informing the jury that it could acquit if it found the officer's conduct unlawful. But the instructions given conveyed the substance of that principle. The jury was instructed that the prosecution must prove beyond a reasonable doubt that the officer gave defendant a lawful command, was making a lawful arrest, or was otherwise acting lawfully, and it was instructed as to the legal standard governing a lawful arrest. Implicit in those instructions was the notion that defendant could not be convicted if the officer's conduct was not lawful—i.e., that "a defendant may resist unlawful police conduct." Use Note, M Crim JI 13.5. On this record, defendant has not shown that the omission of the Use Note language prejudiced his defense.

Because defendant's ineffective-assistance claims lack merit, the trial court did not abuse its discretion by denying his motion for new trial.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman